IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ RAMÓN REYES,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | CIVIL NO.: 18-1046 (ADC) |

**REPORT AND RECOMMENDATION**

Pending before the court is José Ramón Reyes's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits. Plaintiff—who applied for disability alleging depression, carpal tunnel syndrome, a peptic ulcer, a back condition, and obesity—challenges the administrative law judge's decision with regard to steps two, three, four, and five of the sequential process. Plaintiff also challenges the failure of the Appeals Council to consider new evidence he submitted to it.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff filed an application for Social Security benefits alleging that on October 17, 2012 ("the onset date"), he became unable to work due to disability. Tr. 502.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 35. Prior to becoming unable to work, Plaintiff was a "labor gang supervisor."[2] Tr. 59. The claim was denied on February 6, 2014, and upon reconsideration. Tr. 113, 117. Thereafter, Plaintiff requested a hearing, which was held on August 31, 2016 and March 21, 2017 before

---

[1] "Tr." refers to the transcript of the record of proceedings.
[2] The Dictionary of Occupational Titles defines a labor gang supervisor as one who supervises and coordinates the activities of work crews engaged in digging and backfilling excavations for the laying of pipelines or structure footings. DICOT 850.137-014 (G.P.O.), 1991 WL 681893.

Administrative Law Judge Shirley Marzan (hereafter "the ALJ").  Tr. 55, 94.  On May 12, 2017, the ALJ issued a written decision finding that Plaintiff was "not under a disability, as defined in the Social Security Act, from October 17, 2012, through the date of this decision."  Tr. 43.  Thereafter, Plaintiff requested review of the ALJ's decision.  Tr. 9.  Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review.  Tr. 1–4.  Plaintiff filed a complaint on January 1, 2018.  ECF No. 1.  Both parties have filed supporting memoranda.  ECF Nos. 11; 14.

## II.   LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with his

age, education, and work experience, allows him to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

### III.    THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 17, 2012.  Tr. 35. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had an affective disorder and carpal tunnel syndrome.  Id. (citations omitted).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 37.  Next, the ALJ determined that Plaintiff had

> the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can operate hand controls and handle items on a frequent basis with either upper extremity; perform simple, routine, and repetitive tasks; make simple work-related decisions; sustain concentration in intervals of two hours with a 5-minute break after every hour, resulting in being off-task for 20 minutes per day, in addition to normal breaks; interact with coworkers and the public occasionally; and interact with supervisors frequently.

Tr. 39.  At step four, the ALJ determined that through the date last insured, Plaintiff could not perform any past relevant work.[3]  Tr. 42.  At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert.  The vocational expert testified, taking all of these factors into account, that an individual would be

---

[3] Plaintiff notes an inconsistency between two of the ALJ's findings regarding his past relevant work.  The ALJ states that the vocational expert testified that Plaintiff's past work as a labor gang supervisor was skilled, but later explains that transferability of job skills is not an issue in the case because Plaintiff's past relevant work was unskilled.  However, this error was harmless because Plaintiff was limited to unskilled work in the RFC.

5

able to perform the requirements of the following representative occupations: molding machine operating helper, carton-forming machine operator, and potato-peeling machine operator. Tr. 43. Because there is work in the national economy that Plaintiff can perform, the ALJ concluded that he is not disabled. Id.

**IV.    ANALYSIS**

Plaintiff challenges the ALJ's decision with regard to steps two, three, four, and five of the sequential process. Plaintiff also challenges the failure of the Appeals Council to consider new evidence he submitted to it.

**1. The ALJ's Step Two Determination.**

Plaintiff raises several challenges to the ALJ's step two determination. First, Plaintiff contends that his peptic ulcer and back condition constitute severe impairments. With regard to his peptic ulcer, Plaintiff argues that he required a blood transfusion due to anemia. However, as the ALJ noted, the condition was not active at the time of a consultative examination which occurred in 2013. Tr. 744. With regard to Plaintiff's back condition, the ALJ noted that imaging tests showed that Plaintiff had only mild hypertrophy, spondylotic changes, and minimal discogenic disease, without spinal stenosis or neural foraminal narrowing. Tr. 829, 858. There was no evidence of motor, sensory, or reflex deficits.[4] Tr. 765.

Second, Plaintiff contends that the ALJ did not assess the impact of the combination of his non-severe impairments on his ability to function. This argument is not tenable. The mere fact that the ALJ did not explicitly state that she considered the combination of Plaintiff's non-severe impairments does not imply that she did not conduct such an assessment. Indeed, an

---

[4] Plaintiff argues that the ALJ dismissed the severity of Plaintiff's back pain. However, the ALJ specifically acknowledged that Plaintiff was experiencing back pain and considered it alongside the evidence described above. Tr. 36.

examination of the ALJ's opinion reveals that she considered each of Plaintiff's impairments, severe and non-severe, and the limitations associated with them. More importantly, Plaintiff does not cite to any evidence suggesting that the combination of his non-severe impairments has a severe impact on his ability to function.

Third, Plaintiff contends that the ALJ erroneously relied on Dr. Regino Flores's medical source statement. Specifically, Plaintiff argues that Dr. Flores did not provide a function-by-function assessment of his abilities. Plaintiff cites to no legal authority indicating that a failure to provide a function-by-function assessment is a basis for discounting a medical opinion. See Doyle v. Berryhill, No. 5:16-CV-24, 2017 WL 2364312, at *6 (D. Vt. May 31, 2017) ("[A] failure to provide a 'function-by-function assessment' is not a basis for discounting a medical opinion . . . . 20 C.F.R. §§ 404.1527(c), 416.927(c) provide several factors for ALJs to consider in weighing medical opinions . . . . Whether a medical opinion includes a 'function-by-function assessment' is not a factor."). Further, Dr. Flores wrote that Plaintiff felt better while taking medication, which Plaintiff argues does not imply that he could perform basic work activities (though it does not imply the contrary, either). Again, Plaintiff does not cite to any legal authority supporting his contention that whether an individual improves with treatment cannot be considered in determining whether he can perform basic work activities. See Koshak v. Berryhill, No. CV 17-6717-AFM, 2018 WL 4519936, at *7 (C.D. Cal. Sept. 19, 2018) (finding that Plaintiff's impairment did not impose more than minimal limitation on her ability to perform work related activity because her impairment was treated with medication).

Fourth, Plaintiff contends that the ALJ failed to consider the limitations in functioning springing from his obesity. However, the ALJ specifically stated that obesity can cause

7

limitation of function, but that she evaluated Plaintiff's obesity and the record did not substantiate the presence of limitations associated with it. Tr. 36–37.

### 2. The ALJ's Step Three Determination.

Plaintiff contends that his depressive disorder meets the requirements of Listing 12.04. Disability based on depressive disorder requires five or more of the following: depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, observable psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of death or suicide. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Disability based on depressive disorder also requires either 1) extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself, or 2) that the depressive disorder be "serious and persistent." Id.

Plaintiff argues that the record contains evidence of depressed mood, anhedonia, insomnia, psychomotor retardation, decreased energy, feelings of worthlessness, difficulty concentrating or thinking, and thoughts of suicide.[5] Plaintiff also argues that the record reflects marked difficulty with understanding, remembering, or applying information in a sustained manner, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. In support of these contentions, Plaintiff relies exclusively on the opinion of Dr. Edgardo Prieto-Agostini, the treating psychiatrist, which was discounted by the ALJ. Thus,

---

[5] Anhedonia refers to a loss of interest in most activities. Natale v. Comm'r of Soc. Sec., 651 F. Supp. 2d 434, 446 (W.D. Pa. 2009). Psychomotor retardation is defined as an "overall slowing of movement, speech, and mental processes." Polanco-Quinones v. Astrue, 477 F. App'x 745, 748 (1st Cir. 2012).

while Plaintiff challenges the ALJ's decision with regard to step three, he is truly challenging the ALJ's discounting of Dr. Prieto-Agostini's opinion at step four, which is discussed below.

### 4. The ALJ's Step Four Determination.

Plaintiff raises several challenges to the ALJ's step four determination.

### A. The treating psychiatrist's opinion.

Plaintiff contends that the ALJ should have given more weight to the opinion of the treating psychiatrist, Dr. Prieto-Agostini.[6] In her opinion, the ALJ stated that she gave little weight to Dr. Prieto-Agostini's opinion because it was "inconsistent with his progress notes, the consultative examinations and the opinions of the State agency psychological consultants." Tr. 41. The ALJ also noted that Plaintiff had responded well to treatment after his three partial psychiatric hospitalizations and had not been hospitalized since March 2014. Id.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is]

---

[6] Plaintiff argues that the ALJ erroneously relied on the testimony of a medical expert to discount Dr. Prieto-Agostini's opinion. At the first hearing, which occurred on August 31, 2016, the medical expert testified that a psychiatric consultative medical examination was necessary because Dr. Prieto-Agostini's progress notes did not support his conclusions. Plaintiff's argument is not compelling because the ALJ relied on the reasons described above to discount Dr. Prieto-Agostini's opinion, and not the opinion of the medical expert.

otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

An examination of the record reveals that Dr. Prieto-Agostini's opinion is not inconsistent with his progress notes. The progress notes reflect that Plaintiff experienced depressive symptoms such as feelings of worthlessness, anhedonia, difficulty concentrating, and suicidal ideation. Tr. 240, 247, 773–776. On the other hand, the progress notes also demonstrate that Plaintiff remained cooperative and oriented with good eye contact and no perceptual disturbances over the course of treatment, which, according to the ALJ, amounted to an inconsistency. Tr. 242, 248–49, 773–776, 778–779. However, it does not necessarily follow from the fact that an individual cooperates, makes good eye contact with a psychiatrist, and remains oriented without perceptual disturbances during treatment that the individual cannot also experience depressive symptoms. Regardless, any error by the ALJ was harmless because she ultimately concluded that despite the alleged discrepancies between Dr. Prieto-Agostini's opinion and his progress notes, the record did reflect that Plaintiff had an affective disorder. Tr. 40.

The ALJ also stated that Dr. Prieto-Agostini's opinion was internally inconsistent. In particular, despite the fact that Plaintiff had marked difficulties with attention, concentration, and persistence, and that he could not stay at home without supervision, Dr. Prieto-Agostini opined that Plaintiff was able to handle his finances. Tr. 40, 253, 256.

Lastly, certain aspects of Dr. Prieto-Agostini's opinion are inconsistent with aspects of the consultative examination performed by Dr. Edelmiro Rodríguez. Dr. Prieto-Agostini and Dr. Rodríguez both found that Plaintiff's thoughts were coherent, logical, and relevant. Tr. 253, 885. However, while Dr. Prieto-Agostini found that Plaintiff's ability to stay in contact with reality was easily affected by his drastic mood swings (Tr. 255), Dr. Rodríguez found that Plaintiff experienced no perceptual disorders and appeared to be in good contact with reality (Tr. 885). While Dr. Prieto-Agostini found that Plaintiff's judgment and insight were poor (Tr. 254), Dr. Rodríguez found that Plaintiff had adequate judgment and insight (Tr. 886). Further, while Dr. Prieto-Agostini found that Plaintiff demonstrated short lapses in attention and difficulty concentrating (Tr. 254), Dr. Rodríguez found that he had adequate attention and concentration (Tr. 885).

Plaintiff argues that the ALJ erred in noting inconsistencies between Dr. Prieto-Agostini's opinion and the consultative examination performed by Dr. Rodríguez because the consultative examination occurred three years after Dr. Prieto-Agostini's report was written. However, Plaintiff does not cite to any legal authority indicating that an ALJ cannot compare reports or opinions that were produced three years apart. Ultimately, whether two opinions that are three years apart from each other should be compared is a decision that will depend on the particular circumstances of the case. Comparing medical opinions at different points in time can also indicate whether an individual is improving, deteriorating, or stable.

Therefore, although the ALJ erred in concluding that Dr. Prieto-Agostini's opinion was inconsistent with his progress notes, the ALJ was justified in discounting Dr. Prieto-Agostini's opinion due to inconsistences within the opinion itself and between Dr. Prieto-Agostini's opinion and that of Dr. Rodríguez.

11

### B. Plaintiff's limitations associated with carpal tunnel syndrome.

At the hearing, Plaintiff testified that he can lift "maybe" twenty pounds, but no more than fifty pounds. Tr. 105. Plaintiff critiques the ALJ's failure to include this limitation, which he contends springs from his carpal tunnel syndrome, in the RFC. However, the ALJ was not obligated to include this limitation in the RFC. This is due to the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. In so finding, the ALJ noted that there was scarce evidence of treatment for upper extremity conditions. Further, Plaintiff exhibited full hand strength, negative Tinel's or Phalen's, and normal sensation, and he was able to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick a coin, and write with both hands. Tr. 748.

Plaintiff also contends that failing to include limitations pertaining to lifting in the RFC generated an inconsistency between the ALJ's step two finding that he has severe carpal tunnel syndrome and the RFC. However, "[t]he determination at step two as to whether an impairment is severe is a *de minimis* test, designed to 'screen out groundless claims.'" Hines v. Astrue, No. 11-CV-262-PB, 2012 WL 2752192, at *9 (D.N.H. July 9, 2012) (quoting McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir.1986)). "All that is required of the claimant at this step is 'to make a reasonable threshold showing that the impairment is one which could conceivably keep him or her from working.'" Id. (quoting McDonald, 795 F.2d at 1122). Thus, although the ALJ determined that Plaintiff's carpal tunnel syndrome was severe, she was not required to find that it affected his RFC. See id. (citing Griffeth v. Comm'r of Soc. Sec., 217 Fed. App'x 425, 428 (6th Cir. 2007); Sykes v. Apfel, 228 F .3d 259, 268 n. 12 (3d Cir. 2000)) ("An ALJ's finding that an impairment is severe does not necessarily translate into functional restrictions in the RFC").

### C. Dr. René Gómez's opinion.

Plaintiff contends that it was illogical for the ALJ to both rely on Dr. Gómez's opinion that he has no exertional limitations and simultaneously give little weight to Dr. Gómez's description of his hand function. Plaintiff does not cite to any legal authority indicating that an ALJ cannot credit parts of an opinion without crediting the entire opinion. See Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016) ("An ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion.").

### D. Plaintiff's cane use.

Plaintiff critiques the ALJ's failure to include any limitations involving cane use in the RFC. The ALJ noted that Plaintiff had been prescribed a cane. Tr. 36. However, due to Dr. Gómez's finding that during an examination, Plaintiff walked without a limp or gait, climbed onto the examination table without difficulty, and had a negative straight leg raising test, the ALJ did not include any such limitations in the RFC. Tr. 742–43. This the ALJ was entitled to do. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)) (internal citations omitted) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

### E. The opinions of the State agency medical and psychological consultants.

Plaintiff contends that it was illogical for the ALJ to both give partial weight to the State agency medical consultants' opinions and simultaneously give significant weight to the State agency psychological consultants' opinions. Plaintiff appears to confuse the State agency *medical* consultants' opinions with those of the State agency *psychological* consultants. These

13

opinions constitute two distinct sets of assessments which the ALJ was entitled to treat differently.

### F.  Plaintiff's ability to sustain concentration.

Plaintiff challenges the ALJ's determination that he can sustain concentration in intervals of two hours with a 5-minute break after every hour.  This challenge cannot succeed because Plaintiff cites to no evidence suggesting that the ALJ's assessment was incorrect.

### 5.  The ALJ's Step Five Determination.

Plaintiff contends that there is a mismatch between the RFC and the requirements of the work in the national economy that he can perform.  At step four, the ALJ determined that Plaintiff can operate hand controls and handle items on a frequent basis with either upper extremity.  At step five, the vocational expert testified that Plaintiff would be able to perform the requirements of the following occupations: molding machine operating helper, carton-forming machine operator, and potato-peeling machine operator.  An examination of the Dictionary of Occupational Titles reveals that these occupations do not require more than frequent operation of hand controls or handling of items.  The occupation of molding-machine operating helper requires only frequent reaching and handling.  DICOT 520.686-030 (G.P.O.), 1991 WL 674046.  Fingering is not present.  Id.  The occupation of carton-forming machine operator requires only frequent reaching, handling, and fingering.  DICOT 641.685-022 (G.P.O.), 1991 WL 685583.  Lastly, the occupation of potato-peeling machine operator also requires only frequent reaching, handling, and fingering.  DICOT 521.685-250 (G.P.O.), 1991 WL 674160.

### 6.  The Failure of the Appeals Council to Consider New Evidence.

Plaintiff challenges the failure of the Appeals Council to consider new evidence he submitted to it.  Section 404.970(a)(5) of Title 20 of the Code of Federal Regulations provides

that the Appeals Council will review a case if it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision.  Evidence is new "if it is not duplicative or cumulative." Padilla v. Colvin, 525 F. App'x 710, 712 (10th Cir. 2013).  Evidence is material "if there is a reasonable possibility that it would have changed the outcome." Id.

In the case at hand, Plaintiff submitted treatment records from Instituto Fisiátrico del Caribe, dated August 10, 2016 to March 20, 2017 and from Dr. Prieto-Agostini, dated February 2, 2017 to July 11, 2017.  Tr. 20–26, 82–93.  The Appeals Council stated that the additional evidence did not relate to the period at issue, and therefore did not affect whether Plaintiff was disabled beginning on or before May 12, 2017.  Tr. 2.

Plaintiff is correct that a portion of the evidence does relate to the period on or before May 12, 2017, the date of the hearing decision.  Tr. 20–23, 82–93.  However, Plaintiff does not argue, and the record does not reveal, any reasonable possibility that the additional evidence would have changed the outcome of the decision.

V. **CONCLUSION**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision should be AFFIRMED.

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 14th day of February, 2019.

s/Marcos E. López<br>U.S. Magistrate Judge